Good morning, Your Honors. For the record, I'm Tony Gallagher, the Federal Defender in Montana, and I have the pleasure of representing Gene K. Guardipee, Sr. Your Honors, the offense in this case occurred March 28, 2007. Gene was indicted October 20, 2008. Change of plea was in March of 2009. He was sentenced June 8, 2009. During that period of time, there was no independent recollection of the specifics of the offense because he was so intoxicated. The judge at the time of sentencing in this case imposed an enhancement under the specific offense characteristic. Mr. Gallagher, how do we know that that was the cause of his lack of memory? One of the problems with both this case and the next case that you're going to argue is there's very little evidence other than the testimony of the defendant that I'd been drinking or using drugs that night in order to offer what I think you're suggesting is a defense of diminished capacity and inability to form the requisite intent. Judge Tallman, you're absolutely correct. There is little evidence to the contrary that they, Ms. Blackman, in the next case, and certainly Mr. Guardipee in this case, were intoxicated. Velvet Morris makes some reference to the fact that she was intoxicated. Troy Buffalo, after Buffalo, makes some reference to the fact that he was intoxicated and asleep. But there is nothing other than Gene Guardipee's statement to the investigators a year after the offense and at the change of plea hearing and at his sentencing hearing that he was intoxicated. Who's burden is it in this case to show that the intoxication, if any, rose to the point that the requisite intent could not have been formed? Well, Your Honor, it's certainly the defense's responsibility to come forward with some evidence. And what did Mr. Guardipee say at the time of the sentencing, if any, about his state of intoxication? At the time of sentencing, he said very little. But at the change of plea hearing, he said quite a lot. And in the PSR, he told the investigators a year after the offense, almost to the day in 2008, that he was so intoxicated he can't remember what he did. And I appreciate that. But, I mean, in this case, Judge Haddon had to deal with, first of all, nothing raised at the time, really, little evidence that substantiated. I mean, I understand what your client said. But since he has the burden to show this and since there was a finding of requisite intent and he has to chip away at that, what's the standard of review that we look at for purposes of analyzing Judge Haddon's conduct here? Well, there are a number of points there, and I'd like to try to address them seriatim. First of all, I have to go forward with some evidence that there was intoxication. And I believe Judge Tallman and Judge Smith, I did that. I went forward with that evidence in the PSR, in the change of plea hearing, and a reference to it at the time of sentencing. Then the burden is on the government to show that he was not intoxicated or was not intoxicated to such an extent that he could not form the specific intent to use the deadly weapon to cause bodily injury. All right. Well, let's take Mr. Gardype. The evidence, as I understand it, was from his lips, I was too drunk to remember. In essence, I blacked out or I just have no recollection because I had too much to drink that night. Is there anything else besides the statement of the defendant? No, Your Honor, there isn't, but there's nothing to the contrary. Well, let's test that, because Judge Haddon held an evidentiary hearing, did he not, in which he took testimony from the percipient witnesses in Blackman but not in this case? I did not, Your Honor. But you didn't challenge the statements in the PSR? I did not. Okay. So he adopted those statements as the underlying facts. As the underlying facts. And then made factual, in essence, an inference that by virtue of, and I don't know if he used this term, but his organized thinking in first assaulting the verbal argument in the house and then leaving the house, arming himself with the lead pipe, and then returning to the house later after the victim had gone to sleep before he assaulted him. Why isn't that all facts from which a reasonable fact finder could conclude that your client was not so drunk that he could not engage in the mental process of organized thinking to perpetrate the attack? Well, most respectfully, Your Honor, I think we're mixing some apples and oranges here. Okay. First of all, there's certainly, Judge Haddon said, I adopt the facts in the PSR as the facts of this case. Having done so, he adopts the fact that Gene Gardepi is intoxicated. Where in the PSR, in the pre-sentence report, does it show that Mr. Gardepi was intoxicated on the night of the incident? On March 7, 2008, the FBI interviewed the defendant who stated he was very drunk that day and recalled nothing. Paragraph 12, page 4 of the PSR. Okay. That's the only thing we have? Well, certainly, that's one of the things we have. He also made that same statement at the change of plea hearing, and we argued that issue at the time of sentencing. Well, but so this is so his statement is all we've got right here. His statement is all we've got, but Judge Haddon said, I adopt the facts in the PSR. Okay. So the facts in the PSR were that he stayed and he was very drunk, and so Judge Haddon adopted that as a statement. That is a statement of fact. Okay. So your argument is he was so very drunk that day that he couldn't form the intent. He couldn't form the specific intent required under 2A2. Excuse me, Your Honor. 2A2.2b2b. Okay. Now, let me ask you, is this the specific intent always in the gate? Someone's status, someone's state as being very drunk? Your Honor, to answer that question, it doesn't always, but it raises the issue of diminished capacity, which must be addressed by the government by some evidence to show that he was not intoxicated or not so intoxicated. Okay. It says very drunk. Okay. Now, where did you argue that he, what he had, he was suffering from diminished capacity as sort of a legal argument? Well, certainly in my sentencing memorandum at the time of sentencing, Your Honor, that he was so intoxicated he was unable to form the specific intent. As a matter of fact, in the sentencing memorandum, I quoted from the Ninth Circuit jury instruction indicating that intoxication is a defense to a specific intent. But we're dealing with a different standard of proof, correct, aren't we? Absolutely. Upon reference to the evidence at sentencing? Absolutely. Do you argue that this, that the deviation here was so great that it required clear and convincing evidence? Regardless of the fact that we're talking clear and convincing preponderance or beyond the reasonable doubt, when I raise the issue and the issue is raised when the judge accepts the facts in the PSR as the facts of the case, the government falls upon, the burden falls upon the government to prove that it did not occur, as I, as indicated, or that the intoxication was not so great as he claimed. And that's why I want to bring you back. Can you take a look at excerpts of record, page 32? It's the transcript of the sentencing hearing, page 13, where the court essentially makes findings that those facts are sufficient to show intent. Your Honor. Isn't that what he did? Then we – he did do that. Yes. But he didn't have sufficient facts upon which to make that finding. He had the facts from the pre-sentence report, which you don't challenge, and then he does what a jury would do. He looks at the facts of the assault, and although as I – he didn't use the term organized thinking, when he says at line four, I find from this record that the defendant by his voluntary action was capable of and did have the intent to come to that location initially to get into an argument because he did so, the events are undisputed that that occurred, that he left the location by his own volition, that he was capable of and did acquire the pipe that was used for the assault while he was away, that he returned with the pipe, and that he thereupon undertook to attack his sleeping individual and hit him on the head with the pipe and injure him. And then he goes on to say, it's my conclusion that the acts of the defendant were undertaken with intent to do harm. He did exactly what a jury would do in the face of a defense that I was too drunk to form the intent to assault the victim. But the point that's missing is that the government didn't come forward to show by some evidence that Mr. Garnippy was not so intoxicated as to be unable to form the specific intent. Why aren't you conjuring something quite different, though, than what our case law requires, counsel? As Judge Tallman indicated, you've adopted the PSR. You've used that as the basis of your claim of an inability to form the requisite intent. But by the same token, the PSR contains lots of things that the government contained, including this pattern, if you will, that Judge Haddon ultimately found to be sufficient evidence. But you're suggesting that when learned defense counsels say, my client was too drunk to form the capacity, that suddenly, aside from what was in the PSR, for example, in this case, that suddenly the government has a whole new burden to come up with independent evidence of some nature to refute that beyond what in this case was in the PSR? Though I wish that were true, I am not saying that. Okay. What I am saying is that there was evidence here of intoxication, evidence. And the judge acknowledged that. And as Judge Tallman had just read from the sentencing hearing, Judge Haddon specifically considered that. And he looked at the PSR. He commented on what Mr. Garnippy had done, going to the house, getting in the argument, goes outside, he comes back with a pipe, he hits this guy in the head. That certainly shows a pattern. From Judge Haddon's perspective, it was sufficient to show that even though he was intoxicated, he wasn't so intoxicated that he was unable to form the intent necessary to show that this crime was committed. Why is that wrong? I'm not saying he didn't have the intent that the crime that was committed. Right. The crime that was committed was assault resulting in serious bodily injury. Right. The enhancement requires specific intent to cause that bodily injury. Okay. Well, let's move to that level then. Why isn't what Judge Haddon said in his reasoning that Judge Tallman just read adequate to meet that burden? Judge Haddon's plea or factual soliloquy made certain leaps of fact with regard to his plan to go out and do it. It's no different than what a jury would be doing. A jury would be, if you put this whole thing to the jury, wouldn't there be adequate evidence in there that a jury could find that your client had sufficient capacity to do exactly what he ultimately was convicted of with the enhancement? Most respectfully, Your Honor, what the jury could find was that Gene hit Troy with a pipe and he caused serious bodily injury, i.e., he's guilty. And that he had enough wits about him that he got into an argument, he went outside, came back later with the pipe, found, what's the guy's name? Gene? Troy. Troy, yeah. After Buffalo. And he hit him with the pipe. Now, even if a person were completely stone sober and your girlfriend is apparently messing around with somebody else, that's a pretty human reaction to be a little upset by it. That's correct, Your Honor. But the point that I'm making is I'm not arguing whether or not my client is guilty of a crime. He's guilty of assault resulting in serious bodily injury. The judge in this particular case, there was a paucity of the record upon which he could find the specific intent to cause bodily injury. He whacked Troy after Buffalo, but there's nothing in this record which would indicate that he intended to cause bodily injury. That's because you say he was very drunk that day and he caused nothing. Not only I'm saying it, the record says it. Well, I'm reading from the record. But how drunk is very drunk? Pretty drunk. How does he know? Drunk as hell. Even in Montana? Even in Montana, Your Honor. I mean, the beer, the whiskey, wine? We don't know, Your Honor. What we do know is that he was very drunk. But I still am having a hard time, Mr. Gallagher, understanding why this is any different from asking a jury to make an inference from the facts in the record as to what the defendant's mental state was at the time. You would have a much stronger case, in my view, had this fight erupted within the confines of the house, and he reached and just grabbed a nearby poker iron from the fireplace. Yeah. That's coming up. Okay. We'll get to that in a minute. Well, except it was a crutch. Okay. Now we're not talking about the argument that you're relying upon. Yeah, yeah. I mean, you'd have a stronger case if it was more spontaneous. But what bothers me here is the, I guess, the sequence of events and the fact that he must not have been so drunk that he couldn't form some kind of intent to go out and get a weapon and then wait until the victim was sleeping before he assaulted him. Well, although I'm well into Mr. Johnson's time, I will say. They won't hold it against him, don't worry. Some intent ain't specific intent. Can we quote you? Yes. Okay. All right. Let's hear from the government. Let's see if the government can enlighten us. Good morning, Your Honor. This is Leif Johnson for the United States, and may it please the Court. Some intent in this case is sufficient. As the Court has noted, Judge Haddon was doing exactly what the jury would be pressed to do under these same circumstances. And I think the Court, and what Mr. Gallagher I don't think does, is step back and recognize, well, what are we trying to do with this specific intent attachment to the definition of dangerous weapon? Because it states that this was amended in 2003, and the commission really was trying to protect against the situation in the D'Ea case where a defendant could be convicted of assault resulting in serious bodily injury and be operating a motor vehicle where he never really intended to use the vehicle as a weapon. It's a very low level. What we're trying to show here is that the defendant used an ordinary object for something other than its ordinary purpose to be a weapon. Now, let me ask you something that's bothering me. In the context of sentencing, can intoxication negate the specific intent that's required by this particular guideline? Your Honor, I don't know. Just as a matter of abstraction. As a real practical matter in this case, I would say it would be impossible. No, no, no, no. I'm just asking legally. Legally. In the context of sentencing, applying these guidelines, can intoxication negate the requisite intent that's required? You know, I think you could conceive of a case where it's possible. Okay. Here, he was very drunk. Yes. And that's a statement of fact that judge hadn't accepted. Yes. We know that. Well, why is it – could you infer from that that he – that his mental acuity was somewhat impaired? Your Honor, first of all, let's step back. Judge hadn't accepted the fact that he didn't remember the events of the day because he was intoxicated. So it's a gray area as to clearly how much intoxicated he was as you went through with Mr. Gallagher. But the important issue here is that regardless of that, Judge Haddon could look at the facts in the PSR and define that this is a person who had the requisite intent to commit the crime.  remember the events of the day, that's a state of mind to discern that the pipe was not being used for an ordinary purpose but was being used as a weapon. And that takes – that would take an incredible amount of intoxication to overcome. In the facts of this day, the defendant, you know, went into the home, found the victim, left, came back with the pipe and administered the beating. Suppose we had a PSR – suppose we had a blood alcohol level of point – well, I guess what, .25? That's pretty high. That's very high. And we see those in some of these cases. I mean, you know, in almost every one of these types of cases that we get – We don't know anything about what his blood alcohol level was. No, we don't. There's absolutely no evidence. Did we know what he was drinking? I think – no, that was the next case. I don't know what he was drinking. Do we know how long he had been drinking? No. We don't know if they were drinking right before the incident. No, we don't know any of that, Your Honor. What we know from the PSR is that after he retired from law enforcement, he took up drinking and had a problem with it for a while. And we know his self-serving statement that he doesn't remember anything about this crime, even though he pled to it in sort of a no-low contendory fashion. I think Judge Haddon viewed these facts as any jury would and say, well, whoever was there that day knew enough about that pipe that he was using it to administer a beating, and that's enough. And just the sequence of events. Yes. And that's clearly what Judge Haddon was finding. Even though Judge Haddon didn't come right out and say, I find specifically  on intent based from those individual facts. And I think that was fair. And I think a jury ---- Didn't he say that in the language I read? I find from the record by his voluntary action that the defendant was capable of and did have the intent. I mean, that says to me he wasn't so drunk that he couldn't form the intent. Yes. That's exactly right, Your Honor. And so the events of the day pretty much negate any intoxication defense. And I don't think that the government at that point, you know, Mr. Gallagher argues that we had a burden of going forward with other evidence. I don't know what other evidence there was. Are you aware of any case law? Your distinguished opposing counsel suggests that a burden dawned upon the government and the government failed to pick up the cudgel. I'm unaware of any case law that requires that. And are you aware of any? I am not, Your Honor. But government always has the burden on enhancements, right? Yes. We always have the burden and we have the burden at trial of proving an element of the case. And that's our burden. So it would be no different. And I think we can adequately analogize to that situation. Right. There is an unreported case from I think it's 2003 where Judge Flesher in a concurring opinion said, well, you know, if the defense places his mental state at issue, then the Court needs to rule on it. I think he did here and I think he did in both of these cases. And I think that's really what it all boils down to. If the Court has nothing further, I will stop. Not in this case, but you can – are you on the next case? I am. All right. We'll just sit down and we'll just – let's just go right to the next case.
judges: Paez, Tallman, Smith M.